TIMOTHY R. SULLIVAN & others *vs.* BOSTON CONSOLIDATED GAS COMPANY.

Suffolk.    January 2, 1951. — March 7, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, & SPALDING, JJ.

*Gas Company.    Public Utilities.*

A gas company distributing gas purchased from a producer under a contract whereby the price increased as the cost of coal to the producer increased, after having filed with the department of public utilities a schedule of rates providing, in precise conformity to an order of the department, for a fuel charge increasing the price of gas to consumers as the cost of coal increased, rather than as the price paid by the company to the producer increased under their contract, was entitled to make such fuel charge to consumers upon an increase in the cost of coal, notwithstanding that through a Federal price regulation the producer had been forbidden to raise the price for gas supplied to the company.

Rates charged by a public utility company to its customers in accordance with its filed schedules allowed by the department of public utilities cannot be questioned in court proceedings between the customers and the company.

BILL IN EQUITY, filed in the Superior Court on February 13, 1948.

The suit was heard on demurrer and plea by *Donahue, J.*

*C. J. Moynihan*, (*T. D. Lavelle* with him,) for the plaintiffs.

*R. H. Holt*, (*A. P. Schmidt* with him,) for the defendant.

QUA, C.J.    Twenty individuals and the city of Boston, all as consumers of gas supplied by the defendant, bring this bill in behalf of themselves and of all other consumers for the purpose of securing refunds of sums which they contend were wrongfully exacted from them by the defendant in the period from July 1, 1942, to August 1, 1946, under the terms of a fuel charge which the department of public

utilities had ordered the defendant to incorporate in its filed rates. The Superior Court sustained the company's demurrer and also a plea in bar and dismissed the bill. The plaintiffs appeal. As we are satisfied that the demurrer was rightly sustained, we shall not deal separately with the plea.

The allegations of the bill are in substance these: All the capital stock of the defendant is owned by Eastern Gas and Fuel Associates from which the defendant purchases ninety-five per cent of all gas distributed by it. On April 24, 1942, the defendant entered into a new contract with Eastern, which became effective June 30 and which contained a fuel clause whereby the price to be paid to Eastern by the defendant for gas would increase in accordance with a specified formula as the cost of coal to Eastern increased. This contract was approved by the department after some modification not here material. On April 25, 1942, the defendant filed a schedule of rates, known as "M. D. P. U. 99" in which was incorporated a fuel charge providing that whenever the price of gas bought by the defendant under its contract with Eastern should be increased by application of the fuel clause in the contract, the price of gas to its consumers should be increased according to a specified formula. The department disallowed this schedule and ordered the defendant to file a new schedule, known as "M. D. P. U. No. 100" which should contain a fuel charge prescribed in precise words by the department. This prescribed fuel charge, instead of providing that the price of gas to consumers should be increased with the increase in the price paid by the defendant to Eastern for gas, provided that the price of gas to consumers should be increased with the increase in the cost of coal to Eastern. On June 30, 1942, the defendant filed the schedule "M. D. P. U. No. 100," containing the fuel charge precisely as ordered by the department and making the increase in the price of gas to consumers depend upon the increase in the cost of coal to Eastern and not, as in schedule "M. D. P. U. 99," originally filed by the defendant, upon the increase in the price of gas bought from Eastern by the defendant. The new schedule

went into effect July 1, 1942. In the meantime on April 28, 1942, the Office of Price Administration, acting under the emergency price control act of 1942, 56 U. S. Sts. at Large, 23, c. 26, issued a general regulation (7 Fed. Reg. 3153–3157), which forbade Eastern to charge the defendant more for gas than it had charged in March, 1942. The result was that the price of gas to the defendant did not rise during the period while this order was in force, but nevertheless the defendant continued to make a fuel charge to the consumers based upon the cost of coal to Eastern in accordance with schedule "M. D. P. U. No. 100."

It is further alleged that this fuel charge was ordered by the department through mistake and error, the intent and purpose of the department being that the defendant's fuel charge to the consumers should operate only when the price of gas bought by the defendant of Eastern was increased; that "By inadvertence and mistake the order of the department did not contain this provision"; that the defendant knew of this mistake and of the true intent of the department; that the plaintiffs did not know of it until shortly before the filing of the bill; that the defendant knowingly and intentionally took advantage of the department's mistake; and that "its retention of the moneys so collected is inequitable, unconscionable and in violation of the duties owed by the respondent as a public utility to the petitioners and the consuming public."

It is plain at the outset that where the bill speaks of inadvertence and mistake on the part of the department it is not referring to such mistakes as errors in arithmetic or clerical errors such as the unintentional omission of a word, phrase, sentence or paragraph which it had been intended to insert in the order and which was left out by a copyist. Nothing of that kind is alleged. It is clear from the two forms of fuel charge set forth at length in the bill that the difference between them could not have been due to inadvertence or mistake of that kind. The department intended to shift the basis of the fuel charge from the price of gas to the defendant as expressed in the defendant's

schedule "M. D. P. U. 99" to the cost of coal to Eastern as expressed in the schedule "M. D. P. U. No. 100," which the department ordered the defendant to file. Why the department made this change we do not know. But clearly it intended to make it. If there was any inadvertence or mistake as alleged, it must have consisted in miscalculating the effect of the order as deliberately and intentionally made because of failure to foresee that an order of the Office of Price Administration would forbid any increase in the price of gas under the contract between the defendant and Eastern. What effect, if any, a merely clerical mistake subject to immediate correction and known to the defendant would have we do not consider. It seems plain, however, that the kind of mistake with which we are here dealing, if it can be called a mistake at all, did not invalidate the fuel charge as ordered by the department and included in schedule "M. D. P. U. No. 100." See *Karrick* v. *Wetmore*, 210 Mass. 578, 579–580; *Shears* v. *Metropolitan Transit Authority*, 324 Mass. 358, 361–362.

This is not the first time that this state of facts has been before this court. This whole situation was fully examined in *Boston Consolidated Gas Co.* v. *Department of Public Utilities*, 321 Mass. 259, where the facts are stated in complete detail. It was there held that the order of the department setting up the fuel charge in schedule "M. D. P. U. No. 100" was plain and not ambiguous (321 Mass. at pages 264–265); that the gas company had a right to rely upon it (321 Mass. at page 265); that the order fixed the rates for gas to consumers under the governing statute, G. L. (Ter. Ed.) c. 164, § 94, as amended; that those rates must remain in force until changed according to law (321 Mass. at page 267); and that the fuel charges made by the gas company to the consumers were proper charges under schedule "M. D. P. U. No. 100" (321 Mass. at page 268). That case, either expressly or by necessary implication, decided every question presented by the present record.

It is not wrongful for a gas company to charge its customers the rates established by an order of the department.

General Laws (Ter. Ed.) c. 164, § 94, as amended by St. 1939, c. 178, § 1, provides that until the effective date of some change "no different rate, price or charge shall be charged, received or collected by the company filing such a schedule from those specified in the schedule then in effect," with exceptions not here applicable. It is settled that rates charged by a public service company in accordance with its filed schedules allowed by the department cannot be questioned in court proceedings between the customers and the company. *Boston* v. *Edison Electric Illuminating Co. of Boston*, 242 Mass. 305, 311–314. *Gurney Heater Manuf. Co.* v. *New York, New Haven & Hartford Railroad*, 264 Mass. 427. *Wyatt* v. *Boston Consolidated Gas Co.* 319 Mass. 251.

The plaintiffs' appeal from the interlocutory decree sustaining the plea has become immaterial and is dismissed. The interlocutory decree sustaining the demurrer and the final decree dismissing the bill are affirmed.

*So ordered.*