Haverhill District Court
No. 79-043

MOUNTAIN SPRINGS WATER COMPANY, INC.

V.

STANLEY HUBER & a.

August 20, 1979

*Myers & Brown*, of Concord, by brief, for the plaintiff.

*Stanley Huber & a.*, by brief, pro se.

LAMPRON, C.J.    The plaintiff brought small claims actions to recover amounts due for water services against defendants Stanley Huber, Jay Fromer, John and Linda Manter, Jerry and Linde Johnson, William and Joan Sheehan, Joel and Annemarie Godston, and Gordon and Joan Weeman, all owners of lots in the Mountain Lakes subdivision in Haverhill.

The District Court (*Leonard S. Sawyer*, J.) found for all the defendants, although the Weeman defendants did not appear. The court stated that its finding was

> based on the lack of proof of any contract or relationship out of which any debt between the parties could arise. Under RSA 378:1, the Public Utilities Commission has the right to set rates for "services rendered or to be rendered." The order of December 20, 1977, is a valid exercise of that power. However, I can see no way that it imposes any liability on the parties to these suits since no services were rendered to them nor have any services been requested by them, according to the undisputed evidence.

In conjunction with the transfer of plaintiff's exceptions to this court, the trial court granted and denied certain requests of the plaintiff for findings of facts and rulings of law.

The agreement of purchase and sale covering defendants' lots in the Mountain Lakes subdivision, a copy of which is attached to defendants' brief, recited that the improvements of the lots included "water." Also included in the brief is a copy of the "Property Covenants and Easements" covering these lots. Paragraph 16 thereof provides as follows:

> The owner of any vacant lot must, when a structure used for habitation, or business is erected thereon, use the potable water system installed in the subdivision and pay a tie-in charge therefor and thereafter an annual charge based on a tariff formula to be established from time to time by vote of a Water Precinct as provided by New Hampshire Law.

Since October 1973, the plaintiff has been operating as a public utility under a proposal and furnishing water service to customers in the Mountain Lakes subdivision at no charge pending disposition of its petition to operate as a public utility. The Public Utilities

Commission (hereinafter "commission"), on September 23, 1976, issued an order authorizing the plaintiff to operate as a public utility in that territory. The commission further ordered that a standby rate of $25 for the plaintiff's estimated 700 customers, and a general service rate of $140 for its estimated 160 customers was to become effective as temporary rates under RSA 378:27. These charges were effective in all bills rendered on or after October 1, 1976, and the customers were to be so notified.

On September 13, 1977, plaintiff petitioned the commission for emergency rates under RSA 378:9. After five days of hearings, the commission declared a need for emergency rates and fixed the standby rate at $60 and the general service rate at $150, to be effective December 20, 1977. *See Petition of Public Service Co.*, 97 N.H. 549, 84 A.2d 177 (1951). The tariff filed thereunder by the plaintiff with the commission in compliance with its order contained the following provision under its terms and conditions:

> Whether or not a signed application for service is made by the customer and accepted by the Company, the rendering of service by the Company and its use by the customer shall be deemed a contract between the parties and subject to all provisions of the tariff applicable to the service.

The trial court granted requests for findings of fact by the plaintiff to the effect that bills for water services were rendered to each of the property owners including the defendants. As of July 12, 1978, defendants Fromer, Manter and Johnson had paid the general service charges for developed lots but not the standby rates for their unimproved lots. Defendants Sheehan and Godston had failed to pay the standby rates for their unimproved lots as well as the general service rates for their other lots. Defendants Weeman had failed to pay the general service rates for their improved lot and defendant Huber had failed to pay the standby charge for his unimproved lots. The trial court granted as a general principle plaintiff's request No. 12 for a finding of fact that "the availability of water service contributes to the value of unimproved lots."

■ The trial court properly ruled that: "Under RSA 378:1, the Public Utilities Commission has the right to set rates for 'services rendered or to be rendered.' The order of December 20, 1977 is a valid exercise of this power." *See Chicopee Mfg. Co. v. Manchester*, 97 N.H. 109, 81 A.2d 837 (1951) (commission has authority to set standby rates). The trial court's conclusion that the commission's order imposes no liability on the defendants, however, nullifies the

commission's rate determination, which considered the plaintiff's physical plant and the return necessary to meet plaintiff's financial needs. In other words, this is not "simply a case involving a claim by a ratepayer, that he has been overcharged," as in *Nelson v. Public Service Co. of N.H.*, 119 N.H. 327, 402 A.2d 623 (1979).

The instant case involves "the complex issues of rates, fair return, distribution of rates among classes, or other matters better left to the commission." *Id*. Our conclusion in *Nelson* with which the court unanimously agreed in *Bacher v. Public Service Co. of N.H.*, 119 N.H. 327, 402 A.2d 642 (1979) was that: "Ratepayers, of course, may not attempt to challenge the validity of rates or rate components in the district courts in the guise of small claims actions." We hold that this is such a case. Consequently, it is not within the jurisdiction of the district court to pass on the validity of the charges imposed on those who are considered by the commission as being customers of the plaintiff whether they receive standby or general services. *Id*. at 330, 402 A.2d at 643. If the defendants have no defense as to the amount alleged to be due to the plaintiff under the established tariff, there should be judgment for the plaintiff accordingly.

*Plaintiff's exceptions sustained.*

All concurred.