Franklin District Court
No. 80-262

MOUNTAIN SPRINGS WATER CO., INC.

v.

JOEL GODSTON & a.

May 11, 1981

*Myers & Laufer*, of Concord (*Daniel A. Laufer* on the brief and orally), for the plaintiff.

*Laurence F. Gardner*, of Hanover (*Darrell A. Hotchkiss* on the brief and orally), for the defendants.

BROCK, J. The plaintiff, Mountain Springs Water Company, Inc., brought small claims actions against sixty-three different defendants in the Franklin District Court (*Boynton*, J.) to recover amounts allegedly due for "standby" water services. A verdict was entered for the plaintiff. The defendants then appealed to this Court alleging that the district court did not have jurisdiction because the case brought into question the status of their title to real estate. *See* RSA 491:7 (Supp. 1979); RSA 502-A:14 I & II (Supp. 1979). We reverse.

Although there is no record of the proceedings in the district court, the parties' briefs contain some background material that is helpful to an understanding of the issues now before us. In addition, some of this background information is derived from *Mountain Springs Water Co. v. Huber*, 119 N.H. 676, 677–78, 406 A.2d 709, 710–11 (1979), a case upon which both parties rely. The following information has been derived from these sources for the limited purpose of providing background material.

The defendants' properties are all located in a subdivision known as "Mountain Lake" which was originally owned and developed by Town & Country Homes, Inc. When Town & Country developed the area, it sought to create approximately 1,100 quarter-acre lots. Because the proposed lots were too small to support both a septic system and an uncontaminated private well, the State required Town & Country to install a central water system to provide water to each lot.

Certain covenants were inserted, or referred to, in the deeds from Town & Country to the original purchasers, some of whom are the defendants here. These covenants purport to restrict the

owners' water rights in each lot and require that they use the central water system as their exclusive source of water. Under a recorded document labeled "Property Covenants and Easements," which was referred to in the deeds, "the owner of any vacant lot must, when a structure used for habitation or business is erected thereon, use the potable water system installed in the subdivision and pay a tie-in charge therefor and thereafter an annual charge . . . ." The propriety of the Public Utilities Commission's (PUC) establishing the rates for the annual charge based on water actually used by the lot owners is not an issue in this appeal. However, it appears that under this covenant no standby charge was to be assessed against the lot owners. This is evidenced by the fact that Town & Country later amended this covenant so that persons buying lots after the amendment would pay a $25.00 annual standby fee.

Eventually, Town & Country sold its water system to the plaintiff, Mountain Springs Water Company, Inc. The deed to the plaintiff, dated November 1, 1974, also referred to the covenants which restricted the defendants' use of their property. In addition, Town & Country granted to the plaintiff all the easements that it held. On September 23, 1976, the plaintiff was granted permission by the PUC to operate as a public utility. *See Mountain Springs Water Co. v. Huber*, 119 N.H. 676, 677–78, 406 A.2d 709, 710 (1979).

After Mountain Springs became a public utility, it requested a rate increase from the PUC. The PUC approved the rate request, which provided that annual standby charges were to be $60.00. The defendants refused to pay these new rates, and the plaintiff then brought these small claim actions in district court. The defendants moved to dismiss and transfer the case to superior court on the basis that the case brought into question the title to their real estate. RSA 491:7 (Supp. 1979); RSA 502-A:14 I & II (Supp. 1979). The court denied their motion and entered a judgment for the plaintiff. The defendants then appealed to this Court.

■ Without question, the outcome of this case will affect the status of covenants contained or referred to in the deeds of all the parties. If the plaintiff should prevail in its claim, then the practical effect would be a reformation of the terms of the covenants in every deed involved. "This sufficiently involves the title to real estate to remove the case from the jurisdiction of the district court." *Blevens v. New England Tel. & Tel. Co.*, 116 N.H. 247, 247, 356 A.2d 696, 697 (1976).

█ The plaintiff relies heavily on *James Drywall, Inc. v. Europa Dev. Corp.*, 116 N.H. 619, 365 A.2d 1047 (1976), to support its claim that the district court had jurisdiction. *James Drywall*, however, involved a mechanic's lien, which is "not an estate or an interest in land." *Id.* at 621, 365 A.2d at 1049.

██ In the instant case, the parties acquired the real estate from a common grantor who had developed the property in accord with a general scheme. The grantor enforced this general scheme by placing certain restrictions in the deeds to these parties. These restrictions are legal covenants. *Arnold v. Chandler*, 121 N.H. 130, 133, 428 A.2d 1235, 1237 (1981); *see Hanslin v. Keith*, 120 N.H. 361, 363, 415 A.2d 329, 330 (1980). Because the parties' deeds from the common grantor contain covenants that directly bear on the issue of standby water rates, this case raises questions directly relating to the parties' title, rights and interest in the properties. Accordingly, we hold that this case falls outside of the jurisdiction of the district courts, and we order that the judgment be vacated and the case remanded to the superior court for consideration of the plaintiff's claim on the merits, together with the legal and equitable defenses raised by the defendants.

*So ordered.*

All concurred.