Rockingham
No. 81-204
No. 81-205

## The State of New Hampshire

v.

## Thomas Burke

## The State of New Hampshire

v.

## Henry Flynn

July 2, 1982

566

*Gregory H. Smith*, attorney general (*Peter W. Mosseau*, assistant attorney general, on the brief and orally), for the State.

*John A. Macoul*, of Salem, by brief and orally, for Thomas Burke.

*James E. Duggan*, of Concord, appellate defender, by brief for Henry K. Flynn.

DOUGLAS, J. In May 1981, after a jury trial in Superior Court (*Contas*, J.), defendant Flynn was convicted of armed robbery and defendant Burke was convicted of robbery. Defendants appeal to this court, challenging the sufficiency of the evidence, the sufficiency of the court's instruction regarding the reliability of an eyewitness' identification, and the propriety of the court's references to "the defendants" in its jury charge. We affirm both defendants' convictions.

The defendants allegedly robbed a BP gasoline station in Salem, New Hampshire, on October 21, 1980. According to testimony,

three men drove into the station at 1:00 a.m. One of the men began to pump gas; the second went inside the station with the attendant and waited; and the third walked to the side of the building after being informed that the men's room was out of order. The second individual, allegedly defendant Flynn, then produced a knife, held it against the attendant, and demanded money. He told the attendant that the third individual had a gun. Simultaneously, the third person grabbed a customer by the throat and forced him to face the wall. The man who had been pumping gas was also in the building at the time. After the attendant gave $510 to the second individual, they took the money out of the customer's wallet, locked the attendant and customer in the latter's car, and left.

On January 2, 1981, the customer, Paul Boissoneault, went to the Salem police station to look at a photographic lineup of eleven different people. Donald LeBlanc, a Salem police officer, prepared the photographic array by obtaining pictures of the defendants, who were suspects and under arrest, and matching them as closely as possible to photographs of other individuals which were already on file. Mr. Boissoneault did not recognize the alleged robbers. The attendant, Clifford Doiron, also examined the same group of photographs and identified the person who held a knife to him and the person who pumped gas, but could not identify the third person. These two defendants were indicted for armed robbery, a class A felony. At trial, Mr. Doiron identified Burke as the individual who was pumping gas and Flynn as the robber who held the knife to him and took the money. The third individual was not indicted. On May 1, the jury found Flynn guilty of armed robbery and Burke guilty of robbery, the lesser included offense. Flynn was sentenced to the New Hampshire State Prison for not less than seven and one-half years nor more than fifteen years. Burke was sentenced to the New Hampshire State Prison for not less than three and one-half nor more than seven years. Both defendants appealed to this court, and their appeals were consolidated.

We first consider the issues raised by defendant Burke. The indictment against Burke, which was read to the jury, stated:

"That on the 21st day of October 1980 at Salem, New Hampshire, in the County of Rockingham, . . . with force and arms, did, at BP gasoline station on Route 28, commit the crime of robbery in that in the course of committing a theft of station money from Cliff Doiron, station attendant, and from Paul R. Boissoneault, a station customer, he, acting in concert with Henry R. Flynn, who was armed with a knife, purposely threatened the said attendant and

customer with the immediate use of physical force by means of a gun which he claimed to have concealed in his pocket, by which means he and the said Henry R. Flynn unlawfully took a total of $510.00. . . ."

The jury, instructed that it could find the defendant Burke guilty of armed robbery or the lesser included offense of robbery, found him guilty of robbery. On appeal, Burke argues that the trial court erred in denying his motion for a directed verdict at the close of the State's case on the ground that the evidence varied materially from the allegations of the indictment. Defense counsel excepted and preserved the issue for appeal. Burke also excepted to the court's denial of his motion to dismiss notwithstanding the jury verdict.

■ In reviewing denials of motions to dismiss and motions for directed verdicts, the evidence must be construed most favorably to the State, and the defendant must show that the evidence in its entirety was insufficient to prove he was guilty of the crime charged. *State v. Dupuy*, 118 N.H. 848, 850, 395 A.2d 851, 852 (1978); *see* 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 798, at 14 (1980).

■■ The defendant Burke was charged with armed robbery, a class A felony. To be guilty of armed robbery, a defendant must be actually armed with a deadly weapon, RSA 636:1 III(a), reasonably appear to the victim to be armed with a deadly weapon, RSA 636:1 III(b), or inflict or attempt to inflict death or serious bodily injury on another, RSA 636:1 III(c). After a thorough examination of the record we find no testimony or other evidence tending to prove Burke committed the crime of armed robbery with a gun. Although the trial court erroneously refused to grant Burke a directed verdict on the charge of armed robbery, this does not constitute reversible error because Burke was not convicted on that charge. Rather, the jury found him guilty of robbery. We now examine whether the defendant succeeded in proving that the evidence was insufficient to convict him of the lesser included charge of robbery.

Robbery, a class B felony, is defined as follows:

"A person commits the offense of robbery if, in the course of committing a theft, he (a) uses physical force on the person of another and such person is aware of such force; or (b) threatens another with or purposely puts him in fear of immediate use of physical force."

RSA 636:1 I(a), (b). The two victims of the robbery testified that a "third" person, who supposedly had a gun, accosted Mr. Boissoneault.

The evidence adduced at trial showed that Burke arrived with the two other alleged robbers, pumped gasoline, and was present in the office during the incident. The station attendant testified that Burke said he was going to rip the telephone off the wall after the robbery, but decided not to when he learned that it was connected to an alarm system. The three robbers left together after taking the customer's money and locking the two victims in the trunk of a car.

Burke was indicted for "acting in concert with" defendant Flynn. The language "in concert with" adequately informed Burke that he was charged as an accomplice, see *State v. Morin*, 111 N.H. 113, 116, 276 A.2d 476, 478 (1971), and could be held criminally liable for aiding the person committing the crime. *See* RSA 626:8 III(a). The evidence shows that Burke did provide aid. He arrived with the others, was present during the robbery, threatened to tear the telephone from the wall, and left with Flynn and the third individual. Defendant Burke was not passively present at the scene of the crime; rather, his acts were designed to aid the primary actor. *See State v. Goodwin*, 118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978). From this evidence, the jury could have found beyond a reasonable doubt that Burke aided the others in committing the robbery. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Martin*, 121 N.H. 1032, 1033–34, 437 A.2d 308, 309 (1981); *State v. Goodwin*, 118 N.H. at 866–67, 395 A.2d at 1237. His conviction for robbery is affirmed.

The indictment against Henry Flynn charged that he committed:

> "the crime of robbery in that in the course of committing a theft of station money from Cliff Doiron, station attendant, and Paul R. Boissoneault, a station customer, he, acting in concert with Thomas P. Burke, purposely threatened the said attendant and customer with the immediate use of physical force by means of a knife which he brandished threateningly in his hand, by which means he and the said Thomas P. Burke unlawfully took a total of $510.00. . . ."

A crucial issue in this case was the identity of the alleged robbers. Only one of the two witnesses was able to identify them. Thus, the jury had to base its decision upon the reliability of the identification made by that witness. The jury was instructed to "determine whether the State has proven beyond a reasonable doubt the identification of these defendants. [It has] to prove beyond a reasonable doubt that these were the people that supposedly committed the robbery or the armed robbery at the time on October

21, 1980." The court, however, refused to instruct the jury as defense counsel requested to consider the circumstances surrounding the identification, specifically, "whether the witness had an adequate opportunity to observe the person in question, . . . the length of time the witness had to observe the person in question, the prevailing conditions . . . in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times." We are satisfied that the trial court "stated the applicable law in clear and definite language." *State v. Bird*, 122 N.H. 10, 15, 440 A.2d 441, 443 (1982). Although the requested instruction would have helped the jury to assess the reliability of Mr. Doiron's identification, the defendant's rights were adequately protected. In addition, all of the factors mentioned in the requested instruction were scrutinized during cross-examination of Mr. Doiron. Furthermore, during his closing argument, Mr. Flynn's attorney emphasized the inconsistencies in the witnesses' testimony and the factors which might have detracted from the reliability of Mr. Doiron's identification.

██ In the future, however, when eyewitness identification is essential to support a conviction, we, like the United States Circuit Court of Appeals for the Eighth Circuit, "will view with grave concern the failure to give specific and detailed instructions on identification . . . where identification of the defendant is based solely or substantially on eyewitness testimony." *See United States v. Dodge*, 538 F.2d 770, 784 (8th Cir. 1976), *cert. denied, Alvarado v. United States*, 429 U.S. 1099 (1977). We suggest that the trial courts be guided by the instruction set forth in *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C. Cir. 1972), where applicable. In the *Telfaire* instruction, the jury is asked to examine whether the witness had the capacity and an adequate opportunity to observe the offender; whether the witness' identification was the product of his own recollection; whether the witness had ever failed to identify the defendant, or identified him incorrectly; and whether the witness was credible. *Id.*

██ Flynn argues that the trial court erred in denying his motions for directed verdict, made at the close of the State's case and at the close of all the evidence. A directed verdict will be granted when all the evidence is construed most favorably to the State and the defendant shows that the evidence in its entirety was insufficient to prove he was guilty of the crime charged. *State v. Dupuy*, 118 N.H. at 850, 395 A.2d at 852; 2 R. McNamara, *supra* § 798, at 14. We find that the evidence was sufficient to show that Flynn was guilty of armed robbery. The station attendant testified

that Flynn held a knife to his side and demanded money. He described Flynn as "medium size, [with] . . . black hair, mustache, unshaven beard." On the basis of Mr. Doiron's description, the Salem police found a suspect and composed a photographic lineup consisting of Flynn's picture and those of individuals with similar physical characteristics. The station attendant testified he was certain Flynn was one of the robbers. When he identified Flynn in the courtroom, Mr. Doiron said he was positive of the identification. Other than a brief statement made by counsel in his closing argument that Flynn was taller than as described, nothing in the record indicates that Flynn did not match Mr. Doiron's description. In addition, Mr. Doiron described the defendants' car as a light green Monte Carlo with a dent on the side. He later identified the defendants' car from a police photograph; however, the photograph depicted a silver or gray Monte Carlo. Defense counsel stipulated that defendant Burke owned the car depicted in the photograph.

■ We conclude that defendant Flynn has failed to sustain his burden of proof that the entire body of evidence was insufficient to prove he committed the crime of armed robbery. *See State v. Dupuy*, 118 N.H. at 850, 395 A.2d at 852.

■ At the opening of trial, the court granted defense counsel's motion to sequester the witnesses. *See* 1 R. McNAMARA, *supra* § 698, at 478–79. Before Mr. Doiron, the station attendant, began to testify, the defendant's attorney asked the court to consider a voir dire of the witness because he had been "advised and it appeared" that Mr. Doiron had two or three discussions with Mr. Boissoneault after the latter had testified. The court denied the motion. Defense counsel did not except to this ruling and thus failed to preserve the issue for our consideration. *State v. Glidden*, 122 N.H. 41, 48, 441 A.2d 728, 732 (1982).

An element of the offense of robbery under RSA 636:1 I(b) is to "purposely" put the victim in fear of immediate use of physical force. The court instructed the jury that "the purpose or the intent of the defendants . . . must be proved by the State the same as any other fact or facts in the case." Throughout his instruction on intent, the court referred to "the defendants." Defendant Flynn objected to this instruction on the ground that it implied he and defendant Burke were the actual perpetrators of the crime and that the sole question for the jury was whether they committed the acts with the requisite intent.

■ ■ The components of a jury charge cannot be evaluated in artificial isolation; rather, they must be examined in the context of the overall instruction. *State v. Langdon*, 121 N.H. 1065, 1068, 438

A.2d 299, 301 (1981). The jury was told that its function was to determine the weight of the evidence and that the verdict was its sole and exclusive responsibility. The jury was reminded repeatedly that the State had the burden of proving each element of the offense beyond a reasonable doubt. Jurors were instructed that the State's burden was to prove beyond a reasonable doubt that "these were the people [who] supposedly committed the robbery or armed robbery . . . on October 21, 1980." We are satisfied that the instruction as a whole conveyed the applicable law without prejudicing the defendants. *See id.*, 438 A.2d at 301.

 Finally, defendant Flynn argues that the court erred in denying his motion for mistrial at the close of arguments. He believes the State knew or should have known it was incorrect in stating that the "third" individual pushed Mr. Boissoneault against a wall, when Mr. Boissoneault testified the "first" person held him against the wall. In addition to being inaccurate, this argument is irrelevant because defendant Flynn was identified as the "second" alleged robber. Thus, Flynn would not have been prejudiced even if the State had stated the facts incorrectly.

*Affirmed.*

All concurred.